

**TRUSTED ADVICE. INNOVATIVE SOLUTIONS.**

VINCENT F. GERBINO
MANAGING PARTNER

VGERBINO@BGSLAW-NY.COM EXT. 106
ADMITTED IN NY AND NJ

445 Broadhollow Road
Suite 420
Melville, New York 11747
P: 631.390.0010
F: 631.393.5497
**www.bgslaw-ny.com**

August 4, 2023

The Honorable Arlene R. Lindsay
Eastern District of New York
814 Federal Plaza
Central Islip, New York 11722-4451

      Re:    *Farmington Casualty Company et al. v. All County, LLC et al.*
              Index # 22-CV-1067        BGS&A File # 150-3000B

Dear Judge Lindsay:

Plaintiffs (collectively "Travelers") submit this opposition to the Defendants' motion to quash (Doc 23) three subpoenas directed to three banks seeking Defendant All County's bank records. The subpoenas were served on Defendants' counsel on Monday July 10, 2023.

Amongst many infirmities the Defendants' motion violates *Rule 2.A.1.* of the *Court's Individual Practices* as well as *Local Rule 37.3*. First the Defendants made no attempt to meet and confer at all. Most importantly the motion exceeds the three-page limit – it is seven plus pages.

The Defendants motion is singularly the most disingenuous legal filing I have witnessed. Defendants state up front: "Party discovery is proceeding." No, it is not "proceeding." The Plaintiffs served their extensive discovery demands on Defendants on April 27, 2023. (**Exhibit 1**) There was no response. On July 17, 2023, the Plaintiffs served a good faith letter upon the Defendants. (**Exhibit 2**) There has still been no response. The Defendants have not served any discovery demands upon the Plaintiffs.

Defendants' motion to dismiss was made sixteen months after service of the complaint. It is a desperate affair that seeks to undo a host of long held Eastern District precedent. (Complaint at **Exhibit 3**) Contrary to the Defendants' contentions this is not a "no fault case;" the Defendant All County was not "properly credentialed;" and the Defendants' misdeeds go well beyond "misstatements on certain documents filed with the State" to participation in a staged accident ring that was prosecuted by the Eastern District of New York.

## The Gravamen of the Complaint

The Complaint alleges in factual detail that this fraudulent MRI scheme began with the Defendants' operation of a fraudulently incorporated professional corporation ("P.C.") *Carothers v. Progressive Ins. Co.*, 33 N.Y.3d 389, 2019 N.Y. Slip Op. 4643 (2019). This first iteration of the scheme was exposed. The fraudulent straw person medical doctor as well as the fraudulently incorporated P.C. were both forcefully sanctioned by the DOH Board for

Professional Medical conduct. The P.C. was forcibly shuttered by the State and the doctor severely restricted in his practice options. (¶¶12-15; 100-117; 141-154)

To continue the above fraudulent scheme the Defendants violated New York law by applying for and receiving a certification under *Article 28 of the New York Public Health Law*. *Article 28* is an exception to the amalgam of strict New York State statutes, regulations and court precedent that prohibits layperson ownership of medical practices i.e., the "corporate practice of medicine." *Article 28* certification requires that applicants meet exacting standards in order to be classified as a "hospital" as defined by the statute. These standards must be met in both the application process for *Article 28* certification and the actual operation of the facility once it is approved. Such classification is the exception to New York law that prohibits layperson ownership. (¶¶ 157-167)

It is factually alleged with detail that the Defendants made numerous material misrepresentations to DOH in both the initial application process and the operation of the facility. Consequently, DOH qualified Defendant All County LLC to operate as an *Article 28* facility and based upon a series of ongoing lies and violations of the law All County continues to be so qualified. In fact, absent the misrepresentations All County did not qualify as an *Article 28* when Defendants made their application and it certainly does not qualify as an *Article 28* as operated. Most seriously from its initial application throughout its operation, the Defendants took pains to conceal the identity of the persons that control All County to evade the "character and competence" review performed by the State. It is therefore no surprise that All County played an integral role in a staged accident ring wherein certain identified individuals have been convicted of serious federal crimes and have pointed to Defendant All County's essential involvement. (¶¶ 168-339)

**The Subpoenas are Relevant and Proportional**

The hallmark of this scheme is the control of All County by unsavory individuals who have not been disclosed to the State Authorities or anyone else. The subpoenas provide a "follow the money" approach to locating these individuals. This is especially relevant based upon recent findings of the Plaintiff's investigation.

Since filing the complaint we have uncovered information that an Anthony DeGradi ("DeGradi") and a Wayne Hatami ("Hatami") are part of the scheme executed by the current Defendants. Further credible information reveals that DeGradi and Hatami have secretly – without the knowledge of DOH – participated in the operation and control of All County from 2014 to the present. They accomplished this through an undisclosed partnership with Defendant MDHB. In addition, DeGradi and Hatami arranged to have MDHB become the actual owner and operator of All County through multiple transactions between themselves, the Defendants and several shell entities which gave MDHB a controlling financial interest in All County.

DeGradi and Hatami further utilized All County as a vital component in a complex illegal referral scheme. As per the scheme patients were referred to a New Jersey based ambulatory surgical centers ("ASC") owned by DeGradi and Hatami as well as a vast network of other ASCs that participate in the illegal scheme. DeGradi and Hatami went as far as perpetrating the sham sale of shares in medical entities that they own and control in exchange for referrals to make the referral arrangement appear legal. The goal of the illegal referral component of the scheme is to: 1) ship New York patients to New Jersey to take advantage of New Jersey based fee schedules.

2

2) to subject patients to medically unnecessary and potentially dangerous surgical procedures 3) exorbitant charges for ASC fees. DeGradi and Hatami have a long history of insurance fraud.

Even the Defendants' lead case *Allstate Insurance Company v. All County LLC*, 2020 WL 5668956 *2 (EDNY 2020) (Judge Bulsara) found that the information sought here is relevant: "To be sure, financial information can be helpful to show a relationship between entities, which, although not dispositive to ownership, is indicative of a common linkage." The Court had problems with "proportionality and overbreadth." (*Id*.) Problems with proportionality and overbreadth are not present herein.

First Judge Bulsara took umbrage with Allstate's subpoena of the Defendants' accountants: "As for the subpoena to All County's accountants … it is breathtaking in its scope." (*Id.* at 3) We have not subpoenaed accountants.

Secondly Judge Bulsara was particularly aggravated by the definitions section of the subpoenas which astronomically expanded the breath of the demands: "Allstate's current instructions direct the subpoena recipient to produce additional records beyond those in the actual requests themselves." (*Id*. at 4) Meanwhile our subpoenas do not have "instructions" or "definitions."

**This is the real heart of the matter**. Suggestions by Judge Bulsara that the Plaintiffs in the *Allstate* case refine their subpoenas to seek information regarding certain transactions are completely unworkable and untenable **in this matter**. We have not subpoenaed accountants. It is all or nothing with a bank. To wit bank employees will not sift through potentially thousands of pages of documents searching for relevant transactions. Any notion to the contrary is absurd and would render every bank subpoena ever issued in any case null and void. Furthermore, there is absolutely "no burden or expense of the proposed discovery" because the bank is providing the records and Plaintiffs are paying for it. *Fed. R. Civ. Pro 26(b)(1)* Defendants need not lift a finger. Furthermore, we are not seeking personal financial records. We seek only the financial records of All County LLC, which is a business entity.

The Defendants' contention that the Plaintiffs lack any evidence to support their subpoenas is particularly galling considering the Defendants' refusal to respond to discovery demands. The Defendants seek to stymie all efforts to move this case.

Finally with profound respect to Judge Bulsara the decision of this very Court in *Allstate Insurance Co. v. Elzanty*, No. 11-CV-3862 (EDNY 2012) is directly on point:

> Accordingly, far from being a fishing expedition, the plaintiffs have reason to believe that the accounts at issue may be integrally connected to the alleged conspiracy, and thus, the motion is denied. However, because the information is of a private nature, the court restricts the use of the records outside the scope of this litigation.

See, *In re Rule 45 Subpoena Issued to JP Morgan Chase Bank*, 319 F.R.D. 132 (SDNY 2016).

Respectfully,<br>
/s/ *Vincent Gerbino*<br>
Vincent Gerbino

3